UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGEL VAZQUEZ,

                Petitioner,                Case No. 1:16-cv-1379

v.                                         Honorable Robert J. Jonker

S. L. BURT,

                Respondent.
_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## **Factual Allegations**

Petitioner Angel Vazquez is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility in Muskegon Heights, Michigan. On August 30, 2013, an Ingham County Circuit Court jury convicted Petitioner of five counts of first-degree criminal sexual conduct (CSC), MICH. COMP. LAWS § 750.520b(1)(f), and one count of second-degree CSC, MICH. COMP. LAWS § 750.520c(1)(f). On September 26, 2013, the court sentenced Petitioner as a habitual offender-second offense, MICH. COMP. LAWS § 769.10, to concurrent terms of imprisonment of 18 years, 9 months to 30 years on two counts of first-degree CSC; 14 years to 30 years on three counts of first-degree CSC; and 5 years to 22 years, 6 months on the second-degree CSC count.

Petitioner appealed his convictions and sentence to the Michigan Court of Appeals raising four issues:

I. MR. VAZQUEZ' CONVICTIONS FOR FIRST AND SECOND DEGREE CRIMINAL SEXUAL CONDUCT MUST BE VACATED, AS THERE WAS NO PROOF THAT HE "CAUSED" PERSONAL INJURY TO THE COMPLAINANT.

II. MR. VAZQUEZ WAS DEPRIVED OF THE RIGHT TO HAVE A PROPERLY INSTRUCTED JURY DECIDE HIS FATE AND THE RIGHT TO PRESENT A DEFENSE; AND DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.

III. MR. VAZQUEZ WAS SENTENCED ON THE BASIS OF FACTS NOT FOUND BY JURY, IN VIOLATION OF THE SIXTH AMENDMENT.

IV. THE JUDGMENT AND THE PRESENTENCE REPORT MUST BE CORRECTED, BECAUSE THEY INACCURATELY STATE THAT MR. VAZQUEZ WAS CONVICTED OF COMMITTING CRIMINAL SEXUAL CONDUCT AGAINST A PERSON UNDER AGE 13.

(Def.-Appellant's Br., ECF 1-2, PageID.29.)  By per curiam opinion issued April 28, 2015, the court

of appeals affirmed the convictions and sentences with respect to Petitioner's first three issues;

however, the court remanded the matter for the ministerial task of correcting the inaccuracy raised

in Petitioner's fourth issue.[1]

        Petitioner filed an application for leave to appeal in the Michigan Supreme Court,

raising the first three of the four issues he had raised in the court of appeals.  (Appl. for Leave to

Appeal, ECF No. 1-3, PageID.90.)  By order entered December 22, 2015, the Michigan Supreme

Court denied leave to appeal.  Although the supreme court denied the application, it noted that the

court of appeals' resolution of Petitioner's issue III, regarding sentencing, was still appropriate even

though the case the court of appeals had relied on, *People v. Herron*, 845 N.W.2d 533 (Mich. App.

2013), had been overruled in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  Petitioner did not

file a petition for certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.2.)

        Petitioner placed his habeas petition in the prison mailing system on November 29,

2016.[2]  (*Id*., PageID.9.)  The petition raises the three issues that Petitioner raised in both state

appellate courts.  Accordingly, the petition is timely and the Petitioner has exhausted the remedies

available in the state courts.

        The Michigan Court of Appeals provided a concise statement of the testimony at trial:

        The victim was 12 years old when she met defendant, a neighbor who was
        approximately 50 years old.  She and her sister would clean his house, and he would

---

[1]Petitioner was convicted of first-degree CSC under subparagraph f which states that a person is guilty of first degree CSC when the person "causes personal injury to the victim and force or coercion is used to accomplish sexual penetration."  MICH. COMP. LAWS § 750.520(1)(f).  The victim's age is not an element of the crime.

[2]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

pay them $20 for doing so.  The victim testified that defendant would buy her gifts, such as food, underwear, clothes, and an iPod.

The sexual assaults began when the victim was approximately 13 years old.  She testified that defendant touched her breasts, digitally penetrated her vagina, and penetrated her vagina with his penis.  She knew what defendant was doing was wrong, she told him to stop, and that it hurt.  However, the victim continued to visit defendant's house daily because she was afraid of him.  She testified that defendant engaged in sexual conduct with her almost daily, including anal-penile penetration and oral penetration.

Eventually, when the victim approached the age of 16, she became less fearful of defendant.  By the time she was 17 years old, she stopped engaging in sexual activity with defendant.  She testified that the last sexual contact occurred when he touched her breast, she told him no, she ran to the bathroom, and called the police shortly thereafter.

The victim detailed the turmoil these sexual assaults created in her life.  After the first assault, the victim attempted to commit suicide.  The victim's mother tried to get her mental health help through hospitalization and medication.  The victim's sister also explained how the victim underwent a drastic change in behavior when she was around 13 or 14 years old.  Despite her family's efforts, the victim again attempted suicide when she was 16 years old.

The victim also explained that she failed eighth grade even though she previously had been a good student.  The victim's mother verified that her plummeting grades and suicide attempts occurred when the victim was visiting defendant frequently.  The victim also testified that defendant's conduct affected her because she did not think positively about herself.  She explained that after the assaults, she "didn't want to feel."

Defendant confirmed that the victim would often visit his trailer, and he gave her a key so she could look after the trailer when he was out of town.  He admitted that he had sexual intercourse with her when she was 17, but denied having sex with her when she was younger than 16 years old.  A jury convicted defendant of five counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct.

*People v. Vazquez*, No. 320175, 2015 WL 1932069 at *1 (Mich. Ct. App. Apr. 28, 2015) (footnote

omitted).

-4-

**Discussion**

I.    Standard of review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38

(2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

II.   Sufficiency of the evidence

Petitioner challenges the sufficiency of the evidence on only one point.  He claims there was insufficient evidence that Petitioner's sexual assaults *caused* the victim's mental anguish. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*   Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).   Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'"  *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  This standard erects "a

nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to Petitioner's challenge:

> Defendant first contends that the evidence was insufficient to prove he caused personal injury to the victim, a requirement for all of his convictions. We review *de novo* a challenge to the sufficiency of the evidence. *People v. Ericksen*, 288 Mich. App. 192, 195; 793 N.W.2d 120 (2010). "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v. Tennyson*, 487 Mich. 730, 735; 790 N.W.2d 354 (2010) (quotation marks and citations omitted). We resolve conflicts of the evidence in favor of the prosecution, "and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v. Unger*, 278 Mich. App. 210, 222; 749 N.W.2d 272 (2008). We also note that circumstantial evidence and reasonable inferences arising therefrom can constitute sufficient proof of the elements of a crime. *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W.2d 869 (1993).

*Vazquez*, 2015 WL 1932069 at *2. The court of appeals cited *People v. Tennyson* , 790 N.W.2d 354 (Mich. 2010), for the sufficiency standard. The *Tennyson* court, in turn, relied on *People v. Hardiman*, 646 N.W. 2d 158 (Mich. 2002); *Hardiman* relied upon *People v. Johnson*, 597 N.W. 2d 73 (Mich. 1999), *People v. Wolfe*, 489 N.W. 2d 748 (Mich. 1992), and *People v. Hampton*, 285 N.W.2d 284 (Mich. 1979). *Johnson, Wolfe*, and *Hampton* cite *Jackson* as the source of the standard. Thus, it cannot be said that the standard applied by the court of appeals was contrary to clearly established federal law.

The Michigan Court of Appeals applied the standard as follows:

> Pursuant to MICH. COMP. LAWS § 750.520b(f), first-degree criminal sexual conduct occurs when "[t]he actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration." Pursuant to MICH. COMP. LAWS

§ 750.520c(f), second-degree criminal sexual conduct occurs when "[t]he actor causes personal injury to the victim and force or coercion is used to accomplish the sexual contact."

Personal injury, in turn, is defined as "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MICH. COMP. LAWS § 750.520a(n). Mental anguish takes the form of "evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that the victim experienced extreme or excruciating pain, distress, or suffering of the mind." *People v. Petrella*, 424 Mich. 221, 259; 380 N.W.2d 11 (1985). Relevant factors include: evidence that the victim was upset or crying during or after the assault; that the victim needed to seek psychiatric or psychological care or treatment; a resulting interference with the victim's ability to conduct a normal life; the victim's fear for her life or safety, or that of those near to her; feelings of anger and humiliation; evidence that the victim was prescribed some sort of medication to treat her anxiety or other symptoms; and evidence that the emotional or psychological effects of the assault were long-lasting. *Id.* at 270–271.

Here, there was significant evidence of the victim's mental anguish. She had to seek mental health treatment, her normal life was severely disrupted as she failed the eighth grade, she allowed the conduct to continue out of fear that he would harm her, she was unable to think positively about herself and experienced weight gain, and she twice attempted to take her own life. This is significant evidence of acute mental anguish. Further, regarding the last incident where defendant touched the victim's breast, the victim explained that she was pregnant at the time. Defendant began touching her breast when she was sleeping in the middle of the night. Even though she told him no, he continued to assault her . She eventually pushed away and fled. She was so distraught that after running from defendant, she hid in the bathroom, and called the police the next day.

In light of the foregoing, there was sufficient evidence that the victim suffered from mental anguish. Defendant, however, posits that there was insufficient evidence that he caused the victim's mental distress. He incredibly suggests, for example, that her distress could have been due to the loss of her grandmother or because she was living in poverty. Yet, the victim testified that upon reflection, it was fair to say that defendant's conduct was the source of her mental distress. Although defendant offers a different theory, it was for the trier of fact to consider the victim's credibility, and we defer to such determinations. *Unger*, 278 Mich.App at 222. Moreover, "the statute does not require that defendant be the sole cause of the victim's injury." *People v. Brown*, 197 Mich. App. 448, 452; 495 N.W.2d 812 (1992). There was sufficient evidence that defendant caused the victim personal injury.

*Vazquez*, 2015 WL 1932069 at *2-3.  Petitioner does not dispute that the victim suffered mental anguish.  (Br., ECF No. 1-1, PageID.18) ("This evidence does demonstrate that the complainant suffered mental anguish.") He simply claims that there was no evidence that he factually or proximately caused that mental anguish.  (*Id.*, PageID.19.)

The Michigan Court of Appeals found that the victim testified that "it was fair to say that [Petitioner's] conduct was the source of her mental distress."  *Vazquez*, 2015 WL 1932069 at *3.  That finding is presumed correct.

Petitioner can only overcome that presumption with clear and convincing evidence. Petitioner offers no such evidence.  Instead, he merely challenges the credibility of any claim that he caused the mental anguish. He states:

> She said she began to feel badly about herself, gained weight and performed poorly in school. But she never stated or even intimated that it was because of her sexual activity with the petitioner, some of which she admitted was consensual, that she had these difficulties.  On the contrary, her mental suffering appears to have been precipitated by her grandmother's death.  Moreover, the complainant was an adolescent, living in poverty, in crowded conditions, with a neglectful mother who appeared to encourage her to seek petitioner's favors.  She actually sought refuge at petitioner's home, visiting almost daily, and entirely of her own volition, all the while the petitioner was inflicting emotional distress.  Under these surrounding circumstances, there is no reason to conclude that the complainant's sexual activity with this petitioner was the cause of her purported mental distress.

(Br., ECF No. 1-1, PageID.19.)  The victim's direct testimony, viewed in a light most favorable to the prosecution, is certainly sufficient evidence to support the jury's finding that Petitioner caused the victim's mental anguish.  Petitioner's attempts to turn the *Jackson* standard on its head, inviting the Court to view the evidence in a light more favorable to him, when he points to other potential causes of mental anguish and challenges the victim's credibility by identifying inconsistencies between her testimony and her conduct.

-10-

Even absent the victim's direct testimony there is sufficient evidence here to support a finding of causation. "'Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime.'" *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999). The Michigan courts have recognized that mental anguish naturally follows a forcible sexual assault. *People v. Petrella*, 380 N.W.2d 11, 27-28 (Mich. 1985) (court acknowledged the concern that virtually all victims of a forcible sexual assault experience some degree of mental distress or trauma).[3] Thus, when the prosecutor proves the forcible sexual assault and the prosecutor proves the victim thereafter suffered mental anguish, the jury's inference that the assault caused the mental anguish is permissible.[4]

Petitioner has failed to demonstrate the court of appeals' determination regarding the sufficiency of the causation evidence is contrary to or an unreasonable application of clearly established federal law as expressed in *Jackson*. Petitioner has also failed to show that the factual determinations underlying the court of appeals analysis were unreasonable. Accordingly, Petitioner is not entitled to habeas relief.

---

[3]In light of the *Petrella* court's conclusion regarding mental distress as a natural consequence of sexual assault, the court determined the dividing line between first-degree CSC and third-degree CSC was not whether the prosecutor could prove causation, as suggested by Petitioner here, but whether the prosecutor could prove the mental anguish. *Petrella*, 380 N.W.2d at 28.

[4]The Petitioner's contention that the victim's mental distress may have instead been caused by her grandmother's death or her poverty does not alter the permissible inference that Petitioner's forcible sexual assault caused mental anguish. *See People v. Brown*, 495 N.W.2d 812, 814 (Mich. Ct. App. 1992) ("[W]e observe that defendant 'takes his victim as he finds [her]' and therefore any special susceptibility of the victim to the injury at issue does not constitute an independent 'cause' exonerating defendant. . . . There was sufficient evidence from which the jury could find beyond a reasonable doubt that defendant himself inflicted injury upon his victim. Although the amount may be undetermined or even arguably undeterminable, defendant was the cause of some part of the victim's total injury. That is sufficient.")

II.     Jury instructions

Petitioner next challenges the jury instructions.  He claims his trial was constitutionally unfair because (A) the court refused to instruct the jury on Petitioner's defense of consent; and (B) the court failed to include the physical injury requirement in the instructions of second-degree CSC.  Additionally, Petitioner contends his counsel rendered constitutionally ineffective assistance because counsel failed to raise these issues in the trial court.

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Instead, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *Id.*

A.     Consent

As Petitioner emphasizes in his argument regarding the jury instructions, he was not charged with a first-degree CSC crime that depended upon the age of the victim.  Rather, he was charged with first-degree CSC under MICH. COMP. LAWS § 750.520b(1)(f) which provides:

(1)     A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

                              *      *      *

(f)     The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration.

*Id.* Petitioner believes that distinction to be important because the court of appeals relied upon the

victim's age when it resolved his challenge:

> Defendant contends that the trial court erred in failing to instruct the jury on the defense of consent with respect to the first-degree criminal sexual conduct charges. "[B]ased on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *People v. King*, 297 Mich. App. 465, 473; 824 N.W.2d 258 (2012) (quotation marks and citation omitted). However, a trial court is not required to give an instruction on a defense theory unless requested. *People v. Richardson*, 490 Mich. 115, 121; 803 N.W.2d 302 (2011). Moreover, "[w]hen a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Riddle*, 467 Mich. at 124.

> Defendant has not demonstrated that he requested an instruction regarding a consent defense for the first-degree criminal sexual conduct charges. *See Richardson*, 490 Mich. at 121 (the trial court is not required to give an instruction on a defense theory unless requested). In fact, since the consent instruction was given for the second-degree criminal sexual conduct charge, it appears that any omission on the part of defendant was intentional.

> Furthermore, such an instruction was not warranted. "There is no issue of consent in a statutory rape charge because a victim below the age of consent is conclusively presumed to be legally incapable of giving his or her consent to sexual intercourse." *People v. Armstrong*, 490 Mich. 281, 292 n14; 806 N.W.2d 676 (2011) (brackets, quotation marks, and citation omitted). The victim testified about multiple incidents of first-degree criminal sexual conduct beginning when she was 13 years old. Consent is not a defense for sexual conduct occurring when the victim is below the age of consent. *Armstrong*, 490 Mich. at 292 n14; *People v. Wilkens*, 475 Mich. 899, 900; 716 N.W.2d 268 (2006).

> Moreover, even if such an instruction was available, defendant denied that any sexual conduct occurred before the victim was 17 years old. In other words, rather than presenting evidence of consent for these first-degree criminal sexual conduct incidents, defendant completely denied their occurrence. *See Riddle*, 467 Mich. at 124 (a trial court only is obliged to give an instruction on a defense theory when the evidence supports it). Defendant has not demonstrated that a consent instruction was warranted.

*Vazquez*, 2015 WL 1932069 at *4-5.  Under state law, therefore, there can be no defense of consent where the victim has not reached the age of consent, even where the age of the victim is not an element of the crime.

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  To refuse to instruct on a defense that is legally unavailable is not an error, much less an error of constitutional dimension.

B.     Injury requirement for second-degree CSC

Petitioner lists his concern regarding the second-degree CSC charge in his petition (Pet., ECF No. 1, PageID.5) and then refers this Court to his habeas brief for more detail.  His habeas brief, however, is silent on this issue.  (Br., ECF No. 1-1, PageID.19-21.)  Accordingly, the Court will consider this issue as Petitioner raised it in the Michigan appellate courts.

Petitioner was charged with second-degree CSC under MICH. COMP. LAWS § 750.520c(1)(f) which provides:

(1)    A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:

\*          \*          \*

(f)     The actor causes personal injury to the victim and force or coercion is used to accomplish sexual contact.

-14-

*Id.*  It appears to be undisputed that the court failed to reference the "personal injury" requirement in the final charge to the jury on this count.[5]  The court of appeals acknowledged this failure, but determined a new trial was not necessary because the evidence of personal injury, specifically mental anguish, was significant.  *Vazquez*, 2015 WL 1932069 at *5 ("[T]he record is replete with evidence showing personal injury to the victim as a result of defendant's actions.") Accordingly, the court of appeals concluded that any error did not impair the fundamental fairness of the proceedings.

Petitioner acknowledges if, indeed, the record were replete with "'evidence related to the missing element . . . it cannot be said that the error affected the defendant's substantial rights or otherwise undermined the outcome of the proceedings.'"  (Appl. for Leave to Appeal, ECF No. 1-3, PageID.116) (citing *People v. Kowalski*, 803 N.W.2d 200, 212-213 (Mich. 2011)).  Petitioner then attacks the court of appeals factual finding regarding the personal injury evidence by reference to Issue I: "evidence of personal injury in the form of mental anguish was very feeble, since no nexus was established between the sexual activity and the mental anguish allegedly experienced by [the victim] during her tumultuous teen years."  (*Id.*)

For the reason set forth in § II, above, Petitioner's argument challenging the quantum of evidence regarding causation is without merit.  Accordingly, Petitioner has failed to overcome the presumption of correctness afforded the court of appeals' factual determination that the record is replete with evidence showing personal injury to the victim.  That factual determination, in turn, supports the court of appeals' conclusion that Petitioner's trial was not rendered fundamentally

---

[5]The court of appeals noted that the trial court properly instructed the jury regarding the personal injury element of the charge of second-degree CSC in the preliminary instructions. *Vazquez*, 2015 WL 1932069 at *5.

unfair by the faulty instruction. That conclusion is neither contrary to nor an unreasonable application of clearly established federal law. Petitioner therefore is not entitled to habeas relief.

C.      Ineffective assistance of counsel

Petitioner contends that his counsel rendered constitutionally ineffective assistance when he failed to raise the jury instruction issues addressed above. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles*

-16-

*v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen*

*v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those

circumstances, the question before the habeas court is "whether there is any reasonable argument that

counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th

Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at

102).

> The Michigan Court of Appeals rejected Petitioner's ineffective assistance claims:

> "Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise." *People v. Mack*, 265 Mich. App. 122, 129; 695 N.W.2d 342 (2005).  To establish a claim for ineffective assistance of counsel, a defendant first must establish that "counsel's representation fell below an objective standard of reasonableness." *Vaughn*, 491 Mich. at 669 (quotation marks and citation omitted); *see also Strickland v. Washington*, 466 U.S. 668, 687; 104 S Ct 2052; 80 L.Ed.2d 674 (1984).  Second, the defendant must show that trial counsel's deficient performance prejudiced his defense, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Vaughn*, 491 Mich. at 669 (quotation marks and citation omitted); *see also Strickland*, 466 U.S. at 687.

> Even if defense counsel behaved in an objectively unreasonable manner regarding the jury instructions, defendant has not established that the outcome of the proceeding would have been different.  As discussed supra, there was significant evidence of defendant's guilt.  The victim testified that defendant began sexually assaulting her when she was about 13 years old, and continued to do so until she was 17 years old.  These assaults occurred on a daily basis.  The havoc this created in the victim's life is observable in the dramatic drop in her school performance, her feelings of depression and low self-worth, and her multiple suicide attempts.  Her sister verified that the victim underwent a major behavioral change, and the victim's mother confirmed that the change occurred when the victim was spending time with defendant.  Moreover, defendant actually admitted that he had sexual intercourse with the victim, although he claimed it occurred later, when he was approximately 55 years old and the victim was 17 years old.

-17-

> In light of the significant evidence of defendant's guilt, it cannot be said that any defense counsel error affected the outcome of the proceedings. *Vaughn*, 491 Mich. at 669.

*Vazquez*, 2015 WL 1932069 at *6. There is no question that the state court applied the proper standard. The court expressly cited *Strickland*. The court's application of that standard is not unreasonable and the underlying factual determinations are not unreasonable. The court's reasonable conclusion that the absence of instructions regarding consent as a defense to the first-degree CSC charges or the element of personal injury with regard to the second-degree CSC charge had no effect on the outcome of the proceedings, precludes habeas relief.

III.    Sentencing

Finally, Petitioner contends his sentences are unconstitutional because they are based on improper judicial fact-finding when scoring the offense variables regarding facts that were neither admitted nor proven to a jury beyond a reasonable doubt.   The offense variable (OV) scoring is set out in the Sentencing Information Reports Petitioner attached to his habeas petition. (ECF No. 1-2, PageID.71-76.)  Petitioner was scored on four offense variables: OV 4 Degree of Psychological Injury to a Victim (Serious psychological injury requiring professional treatment occurred to a victim - 10 points); OV 10 Exploitation of a Victim's Vulnerability (The offender exploited the victim's youth - 10 points); OV 11 Criminal Sexual Penetration (One criminal sexual penetration occurred 25 points); and OV 13 Continuing Pattern of Criminal Behavior (The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person - 25 points).  Michigan Judicial Institute, State of Michigan Sentencing Guidelines Manual (2013), at pp. 22, 26-27, 29, available at https://mjieducation.mi.gov/documents/felony-sentencing-resources;75-2013-sgm/file.

Petitioner bases his argument on a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and ending with *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated Sixth Amendment rights, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Unlike the State of Washington's determinate sentencing system at issue in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

Subsequent decisions have refined the analysis.  The Supreme Court expanded the *Blakely* reasoning to mandatory minimum sentences in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013).  The Michigan Court of Appeals concluded that *Alleyne* only prohibited judicial factfinding used to determine mandatory minimum sentence, but had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law.  *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013), *rev'd* 870 N.W.2d 561 (2015).[6]  The Sixth Circuit also concluded that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment.  *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).  As a consequence, the Sixth Circuit held, the question is not a matter of clearly established Supreme Court precedent.  *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . ") (quoting *Alleyne*, 133 S. Ct. at 2161 (emphasis added)).

*Alleyne* has changed the landscape of guidelines sentencing in Michigan.  In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in a 5-2 decision, the Michigan Supreme Court considered the question the Michigan Court of Appeals had faced in *Herron* and reached the opposite conclusion.  The *Lockridge* court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase

---

[6]The Michigan Court of Appeals relied on *Herron* in rejecting Petitioner's claim.  *Vazquez*, 2015 WL 1932069 at *7.  *Herron* was reversed following the decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  *Lockridge* is discussed in detail below.

the "mandatory minimum" sentence under *Alleyne*.  *Lockridge*, 870 N.W.2d at 506.  As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional, and the remedy was to make them advisory only. *Id.* at 520-521.

       The Michigan Supreme Court's decision in *Lockridge* does not render the result "clearly established" for purposes of habeas review.  This Court may consider only the "clearly established" holdings of the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  For the same reasons, it may not consider the holdings of the state courts. Instead, this Court may only grant relief on habeas review if the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington*, 562 U.S. at 103).

       As is apparent from the reasoned decisions of the Michigan Court of Appeals in *Herron*, 845 N.W.2d at 539, and the Sixth Circuit in *Kittka*, 539 F. App'x at 673, and *Saccoccia*, 573 F. App'x at 485, as well as the decision of the dissenting justices in *Lockridge* itself, reasonable jurists could and did disagree about whether *Alleyne* applied to the calculation of Michigan's minimum sentencing guidelines. *Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme.  Put differently, even if Petitioner could establish his sentences

ran afoul of the constitution under the *Lockridge* analysis of Michigan's sentencing scheme[7], that would not extablish that they are contrary to or an unreasonable application of the clearly established federal law of *Alleyne*.  Thus, Petitioner is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit

---

[7]Petitioner would not be entitled to habeas relief under *Lockridge* either.  *Lockridge* was decided before the Michigan Supreme Court considered Petitioner's application for leave to appeal.  When the Michigan Supreme Court denied Petitioner's application, it expressly determined that Petitioner was not entitled to relief under *Lockridge*:

Although the Court of Appeals in this case relied on *People v. Herron*, 303 Mich. App. 392, 845 N.W.2d 533 (2013), which this Court overruled in *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015), we are not persuaded that the defendant has established a threshold showing of plain error under *Lockridge* or that the questions presented should otherwise be reviewed by this Court.

*People v. Vazquez*, 872 N.W.2d 459 (2015).  The supreme court's conclusion is properly interpreted as follows: "(1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of [Offense Variable] points necessary for the defendant's score to fall in the cell of the sentencing grid under which he . . . was sentenced." *Lockridge*, 870 N.W.2d at 522.  That determination is well supported by the record: the jury necessarily found that the victim suffered psychological injury (mental anguish), suffered a sexual penetration (any of the first-degree CSC penetrations), that the penetration was part of a pattern (the other four first-degree CSC penetrations), and there is no dispute regarding the victim's age.

that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:     January 30, 2017            /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE